**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL THURBER, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GRAPHIC PACKAGING HOLDING COMPANY, MICHAEL P. DOSS, and STEPHEN R. SCHERGER, | |
| Defendants. | |

Plaintiff Michael Thurber ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Graphic Packaging Holding Company ("Graphic Packaging" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Graphic Packaging

1

securities between February 4, 2025 and February 2, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its former top officials.

2.      Graphic Packaging, together with its subsidiaries, designs, produces, and sells consumer packaging products.  Its customers include businesses in the food, foodservice, beverage, household, and other consumer product industries in the Americas, Europe, and the Asia Pacific.  The Company sells its products through sales offices, as well as through broker arrangements with third parties.

3.      At all relevant times, Defendants touted the purported strength and stability of Graphic Packaging's business model and operations, as well as its purported ability to deliver on its cost and inventory reduction, free cash flow ("FCF"), and profitability goals, notwithstanding ongoing and persistent market headwinds challenging the Company's and its customers' businesses.

4.      Indeed, in February 2025, despite its President and Chief Executive Officer ("CEO"), Defendant Michael P. Doss ("Doss"), acknowledging "unusual volume challenges for the industry and our customers" over the past several years, Graphic Packaging forecasted full year ("FY") 2025 net sales, adjusted EBITDA,[1] and adjusted earnings per share ("EPS") of $8.7 billion to $8.9 billion, $1.68 billion to $1.78 billion, and $2.53 to $2.78, respectively, excluding foreign exchange impacts.  Defendant Doss attributed the Company's ability to weather the aforementioned headwinds to its overall business model and operations, asserting that Defendants

---

[1] "EBITDA" refers to earnings before interest, taxes, depreciation and amortization.

2

would continue to "build on" the Company's "consisten[t]" and "profit[able]" and "strong and steady" results in 2025.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Graphic Packaging was experiencing, *inter alia*, significant inventory management issues, as well as significantly reduced demand and volumes and increased costs; (ii) Defendants downplayed the true scope and severity of the foregoing issues, which were likely to, and did, have a material negative impact on the Company's business and financial results; (iii) Defendants likewise overstated the strength and sustainability of the Company's business model and operations, as well as its ability to weather ongoing macroeconomic headwinds; (iv) accordingly, the Company's previously issued FY 2025 financial guidance was unreliable and/or unrealistic; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

6.      The truth began to emerge on May 1, 2025, when Graphic Packaging issued a press release reporting its first quarter ("Q1") 2025 financial results.  Among other results, the press release reported Q1 non-GAAP[2] EPS of $0.51, missing consensus estimates by $0.07, and revenue of $2.12 billion, representing a 6.2% year-over-year decline, and missing consensus estimates by $10 million.  The press release further revealed that the Company had negatively revised its previously issued FY 2025 net sales outlook to a range of $8.2 billion to $8.5 billion, significantly down from its prior guidance of $8.7 billion to $8.9 billion; its adjusted EBITDA outlook to a range of $1.4 billion to $1.6 billion, significantly down from its prior guidance of $1.68 billion to $1.78 billion; and its adjusted EPS outlook to a range of $1.75 to $2.25, significantly down from

---

[2] "GAAP" refers to generally accepted accounting principles, which are a set of accounting rules, standards, and procedures issued and frequently revised by the Financial Accounting Standards Board.

its prior guidance of $2.53 to $2.78.  The Company blamed the negatively revised guidance on "an expectation of a 2% volume decline and $80 million of input cost inflation at the midpoint", as well as "higher macroeconomic and consumer spending uncertainty."

7.      On this news, Graphic Packaging's stock price fell $3.94 per share, or 15.57%, to close at $21.37 per share on May 1, 2025.

8.      On December 8, 2025, Graphic Packaging issued a press release announcing that it "plans to accelerate certain inventory reduction plans into the fourth quarter that were originally planned for 2026", and that "[p]roduction curtailment is expected to impact fourth quarter operating results by $15 million, which is in addition to the $15 million relating to" certain earlier-announced curtailments.  The Company further revealed that it had negatively revised its FY 2025 financial guidance again, now expecting its adjusted EBITDA "to be in the range of $1.38 billion to $1.43 billion"—significantly below its previously revised guidance of $1.4 billion to $1.45 billion—and adjusted EPS "to be in the range of $1.75 to $1.95"—significantly below its previously revised guidance of $1.80 to $2.00.

9.      In a separate press release issued the same day, Graphic Packaging announced that Defendant Doss had "mutually agreed with [its] Board of Directors to step down from his role [as President and CEO] and as a director effective December 31, 2025."

10.     Following these disclosures, Graphic Packaging's stock price fell $1.35 per share, or 8.66%, to close at $14.23 per share on December 9, 2025.

11.     Then, on February 3, 2026, Graphic Packaging issued a press release reporting its fourth quarter ("Q4") and FY 2025 financial results.  Among other results, Graphic Packaging reported Q4 non-GAAP EPS of $0.29, missing consensus estimates by $0.06.  The Company attributed its disappointing Q4 2025 earnings results to, *inter alia*, lower volumes, increased costs,

4

and inventory reduction.  Further, Graphic Packaging projected a meaningful decline in adjusted EBITDA in 2026, citing "a $130 million negative impact from actions taken to reduce inventory and generate [FCF], an approximately $100 million accrual (non-cash in 2026) for a return to more normal incentive compensation, January weather and production impacts, and other largely offsetting operating items."

12.    In the same press release, Graphic Packaging's new President and CEO, Robbert Rietbroek ("Rietbroek"), announced that he had "initiated a comprehensive review of our organization structure, operations, and footprint," among other aspects of the Company's business, thereby confirming the weakness and unsustainability of its present business model and operations.

13.    On this news, Graphic Packaging's stock price fell $2.36 per share, or 15.97%, to close at $12.42 per share on February 3, 2026.

14.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

15.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

17.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Graphic Packaging's common stock trades on the New York Stock Exchange ("NYSE"), which is located in this District.

18.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

19.     Plaintiff, as set forth in the attached Certification, acquired Graphic Packaging securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

20.     Defendant Graphic Packaging is a Delaware corporation with principal executive offices located at 1500 Riveredge Parkway, Atlanta, Georgia 30328.  The Company's common stock trades in an efficient market on the NYSE under the ticker symbol "GPK".

21.     Defendant Doss served as Graphic Packaging's President, CEO, and a Director on the Company's Board at all relevant times until January 1, 2026.  During the Class Period, Defendant Doss sold nearly 1.6 million shares of the Company's common stock, enriching himself by over $7 million.

22.     Defendant Stephen R. Scherger ("Scherger") served as Graphic Packaging's Executive Vice President ("EVP") and Chief Financial Officer ("CFO") at all relevant times until November 7, 2025.  During the Class Period, Defendant Scherger sold 65,529 shares of the Company's common stock, enriching himself by nearly $1.8 million.

23.     Defendants Doss and Scherger are collectively referred to herein as the "Individual Defendants".

24.     The Individual Defendants possessed the power and authority to control the contents of Graphic Packaging's SEC filings, press releases, and other market communications.

6

The Individual Defendants were provided with copies of Graphic Packaging's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Graphic Packaging, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

25.    Graphic Packaging and the Individual Defendants are collectively referred to herein as "Defendants".

**SUBSTANTIVE ALLEGATIONS**

**Background**

26.    Graphic Packaging, together with its subsidiaries, designs, produces, and sells consumer packaging products. Its customers include businesses in the food, foodservice, beverage, household, and other consumer product industries in the Americas, Europe, and the Asia Pacific. The Company sells its products through sales offices, as well as through broker arrangements with third parties.

27.    At all relevant times, Defendants touted the purported strength and stability of Graphic Packaging's business model and operations, as well as its purported ability to deliver on its cost and inventory reduction, FCF, and profitability goals, notwithstanding ongoing and persistent market headwinds challenging the Company's and its customers' businesses.

**Materially False and Misleading Statements Issued During the Class Period**

28.     The Class Period begins on February 4, 2025, when Graphic Packaging issued a press release during pre-market hours reporting its Q4 and FY 2024 financial results.  The press release provided financial guidance for the Company's FY 2025, stating, in relevant part:

> The Company currently expects 2025 Net Sales, Adjusted EBITDA, and Adjusted EPS, excluding foreign exchange impact, of $8.7 billion to $8.9 billion, $1.68 billion to $1.78 billion, and $2.53 to $2.78, respectively. At current forward rates, the company estimates current foreign exchange headwinds to Net Sales, Adjusted EBITDA, and Adjusted EPS, of approximately $120 million, $20 million, and $0.05, respectively. Including the current foreign exchange headwind, expected 2025 Net Sales, Adjusted EBITDA, and Adjusted EPS are $8.6 billion to $8.8 billion, $1.66 billion to $1.76 billion, and $2.48 to $2.73, respectively.

29.     Additionally, the press release quoted Defendant Doss as touting the purported strength and sustainability of Graphic Packaging's business model and operations, asserting that Defendants would continue to "build on" its "consisten[t]" and "profit[able]" and "strong and steady" results in 2025, despite increased market headwinds[3]:

> In 2024, *we demonstrated the value of the Graphic Packaging business model*, generating a level of *consistency and profitability* in line with other leading consumer packaging companies. We delivered *strong and steady margins* and *significant new consumer packaging innovations*. Our strategic investments in capabilities, innovation, and competitive advantage *have positioned the company for long-term value creation. In 2025, we will build on that success, driving competitive advantage in recycled paperboard across all of North America, and expanding our innovation capabilities into new markets and new product categories around the world.*

30.     As quoted in the same press release, Defendant Doss downplayed the "volume challenges" plaguing Graphic Packaging's industry, while simultaneously touting the Company's ability to weather the same, stating:

> The past two years have presented unusual volume challenges for the industry and our customers. *Customer destocking is largely over*, but consumers are stretched and searching for value in their everyday purchases. Across grocery, convenience, e-commerce and mass retail, *Graphic Packaging is responding to our customers'*

---

[3] All emphases herein are added unless otherwise indicated.

*evolving needs by creating the more circular, more functional, and more convenient packaging that consumers prefer.* As the last of our major asset investments comes to completion in 2025, *capital spending will decline significantly, and we will deploy excess cash to create substantial value for our stockholders*.

31.     The same day, Graphic Packaging hosted a conference call with investors and analysts to discuss its Q4 and FY 2024 results. During his prepared remarks on the call, Defendant Doss continued to tout the strength and sustainability of Graphic Packaging's business model and operations amid ongoing, challenging market conditions, stating, *inter alia*:

> In 2024, *we demonstrated the strength of our business model*, delivering *strong and steady margins and challenging market conditions*. *We are well-positioned for 2025* and to meet our Vision 30 aspirations in the years ahead.
>
> * * *
>
> When I became CEO back in 2016, our business which was about half the size, far less balanced than it is today, wasn't capable of generating *the consistency that we now deliver*.
>
> *Our team has done an outstanding job executing at a high level* to build a consumer packaging business *capable of generating strong and steady margins and cash flows across a variety of market environments*.
>
> 2024 saw a clear consumer focus on finding value, significant growth in private label and more consumers shopping for groceries at club and superstores. Our portfolio *which is designed to move with the consumer responded well to those trends*. We introduced new packaging innovations in all categories with significant new product innovations for our private label customers across the U.S. and Canada and Europe.

32.     On the same call, during his prepared remarks, Defendant Scherger similarly stated, in relevant part:

> Despite a broad-based customer and retailer destocking and consumers under pressure from inflation, both of which reduced our volumes, *we are generating appropriate value for the packages we deliver and that is translating into strong and steady margins*.
>
> * * *

9

Given the volume challenges our customers are facing, ***the bottom of our 2025 adjusted EBITDA range assumes the year not very different from the one we just ended***. Even at that level, margins would be in the 19% range, which again speaks to the ***strength of the business model***.

33.     During the question-and-answer ("Q&A") phase of the call, an analyst inquired "about inventory levels", noting that "inventory days . . . have kind of jumped up since 2018" and that inventory "also kicked up a little bit in 2023 and 2024", and asked if "that's intentional"?  In response, Defendant Doss represented that increased inventory levels were indeed intentional to right-size for demand, and that the inventory would "wash through pretty quickly" as a new mill came online, stating:

> ***Yes, you[r] read is good*** . . . . [I]n some cases, we did have inventories that were a bit depleted coming out of the rush through the pandemic, if you will. And so ***our customers wanted us to get those back to the traffic levels, which we've done.***
>
> The biggest impact on a year-over-year basis to give some of the planning we're already doing to get ready for the Waco start up as you can appreciate, we've got a couple of paperboard manufacturing facilities that we need to take down and what we need to start up. So, ***we have to make sure we protect our customers during that process.***
>
> ***You'll see that wash through pretty quickly as Waco comes online, we expect to harvest that working capital. It's something we've got an [eye on], we want to normalize our paperboard and the levels that we have.*** But when you're going through a startup like that, ***you've got to make sure that you cover for some of the contingencies, that's what we're doing***.

34.     Also during the Q&A phase of the call, another analyst asked Defendants whether "your inventories are balanced where you want to be? Or is there still some more work to bring those down I think, build some inventory ahead of the Augusta [manufacturing facility] closure?" In response, Defendant Doss again reiterated that the increased inventory levels were intentional and healthy, stating:

> ***Yes.*** So, as I kind of mentioned there . . . ***we had some rebuilding we needed to do with our finished goods coming through the pandemic. We've done that. We have to be able to service our customers in a highly variable market.*** We feel about

where we're at. Our on-time delivery is very high, and we're servicing them very well.

As I mentioned, ***we made a decision to build a little bit of paperboard inventory*** here as we prepare for start of Waco paperboard mill, but as I mentioned earlier in my comments, ***that will wash [through] pretty quickly as we bring that mill up and running***.

So, ***by and large, we like where we're at with our finished goods . . . . [I]t's a balance to make sure that we're able to respond to customer needs in a highly variable market.***

35.     On February 12, 2025, Graphic Packaging filed an annual report on Form 10-K with the SEC, reporting its financial and operating results for its Q4 and FY ended December 31, 2024 (the "2024 10-K").  The 2024 10-K touted Graphic Packaging's ability to align with customer needs and tailor its operations accordingly, stating, in relevant part:

> ***Graphic Packaging works closely with its customers to understand their needs*** . . . . The Company's approach serves to build and strengthen long-term relationships with purchasing, brand management, marketing, and other key customer functions. ***The Company is organized to bring the full resources of its global and local . . . manufacturing capabilities to all of its customers with the goal of delivering packaging solutions that are more circular, more functional, and more convenient.***

36.     Appended as exhibits to the 2024 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 2024 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

11

37.    The statements referenced in ¶¶ 28-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Graphic Packaging was experiencing, *inter alia*, significant inventory management issues, as well as significantly reduced demand and volumes and increased costs; (ii) Defendants downplayed the true scope and severity of the foregoing issues, which were likely to, and did, have a material negative impact on the Company's business and financial results; (iii) Defendants likewise overstated the strength and sustainability of the Company's business model and operations, as well as its ability to weather ongoing macroeconomic headwinds; (iv) accordingly, the Company's previously issued FY 2025 financial guidance was unreliable and/or unrealistic; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

38.    The truth began to emerge on May 1, 2025, when Graphic Packaging issued a press release during pre-market hours reporting its Q1 2025 financial results.  Among other results, the press release reported Q1 non-GAAP EPS of $0.51, missing consensus estimates by $0.07, and revenue of $2.12 billion, representing a 6.2% year-over-year decline, and missing consensus estimates by $10 million.  The press release also revealed that the Company had negatively revised its previously issued FY 2025 net sales outlook to a range of $8.2 billion to $8.5 billion, significantly down from its prior guidance of $8.7 billion to $8.9 billion; its adjusted EBITDA outlook to a range of $1.4 billion to $1.6 billion, significantly down from its prior guidance of $1.68 billion to $1.78 billion; and its adjusted EPS outlook to a range of $1.75 to $2.25, significantly down from its prior guidance of $2.53 to $2.78.  The Company blamed the negatively

revised guidance on "an expectation of a 2% volume decline and $80 million of input cost inflation at the midpoint", as well as "higher macroeconomic and consumer spending uncertainty."

39. The foregoing disclosures shocked the market. As reported by *Bloomberg* the same morning, "Graphic Packaging shares plunge[d] as much as 16%, the most intraday since October 2018, after the company cut its adjusted Ebitda guidance for the full year" with a "diminished outlook [that] missed the average analyst estimate." Similarly, the same day, *RTT News* reported that Graphic Packaging's stock price had "touched a new 52-week low of $21.16, with volume surging to 8.39 million shares, well above the average of 2.73 million."

40. Ultimately, Graphic Packaging's stock price fell $3.94 per share, or 15.57%, to close at $21.37 per share on May 1, 2025. Despite this decline in the Company's stock price, Graphic Packaging's securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of the Defendants' continued misstatements and omissions regarding, *inter alia*, the strength and sustainability of the Company's business model and operations, its ability to weather ongoing macroeconomic headwinds, its significant inventory management issues, and its FY 2025 financial guidance.

41. For example, the same May 1, 2025 press release quoted Defendant Doss as largely downplaying concerns with the Company's volumes, costs, and cash generation, stating, in relevant part:

> [W]e saw a small volume decline in the Americas business, but continued improvement in our International business. Leveraging our growing cost and quality advantage and the strength of our innovation portfolio, we continue to gain market position as we partner with customers in a rapidly changing market.
>
> We saw an uptick in input cost inflation during the quarter, and responded with a price increase intended to bring margins back to a more normal range. With our Waco, Texas recycled paperboard investment nearing completion, our capital spending needs decline substantially . . . . We expect to return substantial cash to

stockholders in the months and years ahead through a growing dividend and share repurchase.

42.     Also on May 1, 2025, Graphic Packaging hosted a conference call with investors and analysts to discuss its Q1 2025 results.  During his prepared remarks on the call, Defendant Doss continued to downplay the reduced demand and volumes and increased costs the Company was experiencing, stating that "[w]hile these challenges won't be resolved overnight, ***neither are they long-term in nature***", and that Defendants "***have taken actions to offset higher costs and continue to generate innovation sales growth*** that is helping us grow faster than the end markets we serve."   He further represented that, "[d]espite ***near-term*** challenges, ***we remain well-positioned to generate substantial cash flow in the quarters and years ahead***."

43.     During the Q&A phase of the call, in response to multiple analyst questions regarding volume and inventory, the Individual Defendants indicated that they were capable of actively managing inventory levels to meet supply and demand.  For example, Defendant Doss stated, *inter alia*:

> [A]s we look at [FY 2025] and how we want to operate the business, while we can't control our volumes, ***what we can control is our cash flow***. And we want to ***run our business really to demand and making sure that we're running to the requirements that we see in front of us***.
>
> ***That'll eliminate some of the inventory***[.]

44.     Similarly, Defendant Scherger repeatedly stressed Defendants' focus on matching supply to demand for the year.  For example, he stated, *inter alia*, that "we're going to run to demand this year", "[w]e'll be matching supply and demand", and "[w]e will be taking inventory out of the business" and "aggressively matching supply and demand for the remainder of the year[.]"

45.    Also on May 1, 2025, Graphic Packaging filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q1 ended March 31, 2025 (the "Q1 2025 10-Q").  The Q1 2025 10-Q contained the same statements as referenced in ¶ 35, *supra*, touting Graphic Packaging's purported ability to align with customer needs and tailor its operations accordingly.

46.    Appended as exhibits to the Q1 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

47.    On July 29, 2025, Graphic Packaging issued a press release reporting its second quarter ("Q2") 2025 financial results.  The press release quoted Defendant Doss as stating:

> Promotional activity drove ***modestly better than expected volumes*** in [Q2]. Conversations with our customers ***suggest potential for increased emphasis on volume growth*** and protecting share in the year ahead. As these customers refine their strategies, ***we are working closely with them to support their plans***.

48.    The press release also announced that Graphic Packaging had positively revised (*i.e.*, raised) the bottom range of its FY 2025 financial guidance, projecting net sales of at least $8.4 billion, up from Graphic Packaging's prior guidance of at least $8.2 billion; adjusted EBITDA of at least $1.45 billion, up from its prior guidance of at least $1.4 billion; and adjusted EPS of at least $1.90, up from its prior guidance of at least $1.75.  The Company cited "actual first half performance and a . . . modest increase in second half revenue expectations" for this positively revised guidance.

49.    The same day, Graphic Packaging hosted a conference call with investors and analysts to discuss its Q2 2025 results.  During his prepared remarks on the call, Defendant Doss stated, *inter alia*, that "[o]ur decision to curtail production to further reduce inventory levels . . . ***positions us to operate much closer to normal levels in the second half***."

15

50.    Similarly, during his prepared remarks on the call, Defendant Scherger stated, in relevant part, that Q2 "is our biggest maintenance quarter, and *we took aggressive action to manage inventories, which . . . positions us to run at more normal levels in the second half*," and that "we expect second half adjusted EBITDA margins to be meaningfully better than first half *as a result of actions we have taken to reduce inventories*[.]"

51.    During the Q&A phase of the call, Defendants further touted the actions they had taken to manage inventory effectively.  For example, in response to an analyst's question regarding Graphic Packaging's ability to meet its margin goals for the second half of the year "[a]nd what's sustainable into '26 and beyond", Defendant Scherger stated, *inter alia*:

> Q2 was very high for planned maintenance and less market-related downtime as *we took over 50,000 tons of inventory out of the company in the first half that doesn't need to be repeated in the second half*. So 2 major components to the $100 million price and performance being $25 million and $60 million cumulatively. The remaining $15 million is a cross-section of some other inflation FX [foreign exchange] items, so relatively modest.
>
> [. . . . W]e're *very pleased with our inventory reduction efforts through -- from December here through June*. There'll be more inventory coming out of the company naturally in the second half of the year . . . , *but the economic impact of that is relatively modest as we sell aggressively out of inventory*.

52.    In response to another analyst's question regarding whether Graphic Packaging's customers are "sitting on comfortable levels of inventory, maybe a little less than the need or more than they need as they go into the back half", Defendant Doss stated, in relevant part:

> *[O]ur volume [is] obviously quite good this year* . . . . I can tell you *we're busy. We're steady. The demand is strong. We've gotten no indications from them that it's going to back off before the normal occurrence*[.]

53.    Also on July 29, 2025, Graphic Packaging filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q2 ended June 30, 2025 (the "Q2 2025 10-Q").  The Q2 2025 10-Q contained the same statements as referenced in ¶ 35, *supra*,

16

touting Graphic Packaging's purported ability to align with customer needs and tailor its operations accordingly.

54. Appended as exhibits to the Q2 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

55. On October 9, 2025, Graphic Packaging filed a current report on Form 8-K with the SEC, disclosing that Defendant Scherger was resigning as its EVP and CFO, effective November 7, 2025, to pursue another opportunity.

56. On November 4, 2025, Graphic Packaging issued a press release reporting its third quarter ("Q3") 2025 financial results. The press release quoted Defendant Doss as stating, in relevant part:

> Against a backdrop of sluggish consumer volumes, *we executed well in the quarter, reduced inventory, and saw our innovation engine open new markets for paperboard packaging. As food affordability challenges ease, the full power of our business model and its cash generating potential will become even more apparent.*

57. With respect to the Company's financial outlook for FY 2025, the press release stated, in relevant part:

> The Company currently expects full-year 2025 Net Sales, Adjusted EBITDA, and Adjusted EPS, including foreign exchange impact, of $8.4 billion to $8.6 billion, $1.45 billion to $1.55 billion, and $1.90 to $2.20, respectively. The changes from prior guidance reflect actual first half performance and a narrowing of and modest increase in second half revenue expectations.

58. The same day, Graphic Packaging hosted a conference call with investors and analysts to discuss its Q3 2025 results. During his prepared remarks on the call, Defendant Doss stated, *inter alia*, that "*[w]e executed well in the quarter, made progress on costs and reduced inventory.*" The press release also quoted him as largely downplaying concerns with costs and inventory, stating, in relevant part:

In this environment, *we are focused on the things we can control, and that includes cost and inventory*. We are assessing opportunities to further reduce SG&A *and finding other opportunities to reduce costs, which I believe will further cement our significant efficiency and margin advantage over competitors*.

*You saw us take action to reduce inventory in [Q2] and [Q3], and we will continue to drive inventory out of our system . . . . In [Q4], we will take further action to balance production with customer demand, which we expect to have approximately a $15 million impact on EBITDA.* These decisions are intended to protect our margin profile and to protect our volume. At a time when competitors are running for cash and signing contracts that we believe carry margins well below the cost of capital, we are focused on protecting our industry-leading margins and protecting share where *we are the best and most logical supplier in the medium and long term*.

*We are using this period of unusual competitive behavior to align our order books with customers* who understand the durable competitive advantages that we have in innovation, cost, efficiency and quality. Our year-end leverage target is up modestly.

59.     During the Q&A phase of the call, in response to an analyst's question regarding the Company's ability to "improve productivity and the like", Defendant Doss represented, in relevant part, that Defendants have "*a unique perspective to be able to look at our overall system, look at our supply chains, take a step back and really make sure that we're challenging kind of where we're at and what we can do*", which "are the levers *that we really have in our control*", and that with respect "to manag[ing] our supply and demand on our coated recycled paperboard", "*[w]e're able to do that and we're able to do it cost effectively*."

60.     Also on November 4, 2025, Graphic Packaging filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q3 ended September 30, 2025 (the "Q3 2025 10-Q").  The Q3 2025 10-Q contained the same statements as referenced in ¶ 35, *supra*, touting Graphic Packaging's purported ability to align with customer needs and tailor its operations accordingly.

18

61.    Appended as exhibits to the Q3 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

62.    The statements referenced in ¶¶ 41-54 and 56-61 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Graphic Packaging was experiencing, *inter alia*, significant inventory management issues, as well as significantly reduced demand and volumes and increased costs; (ii) Defendants downplayed the true scope and severity of the foregoing issues, which were likely to, and did, have a material negative impact on the Company's business and financial results; (iii) Defendants likewise overstated the strength and sustainability of the Company's business model and operations, as well as its ability to weather ongoing macroeconomic headwinds; (iv) accordingly, the Company's previously issued FY 2025 financial guidance was unreliable and/or unrealistic; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Continues to Emerge**

63.    The truth continued to emerge on December 8, 2025, when Graphic Packaging issued a press release during post-market hours announcing that it was accelerating certain inventory reduction plans earlier than projected, and expected increased costs in connection with the same.  Specifically, the press release stated, in relevant part:

> [T]he Company plans to accelerate certain inventory reduction plans into [Q4] that were originally planned for 2026. Production curtailment is expected to impact [Q4] operating results by $15 million, which is in addition to the $15 million relating to curtailments announced during [Q3] earnings call.

64.    The same press release also disclosed that Graphic Packaging had, again, negatively revised its FY 2025 financial guidance—specifically, that "[a]djusted EBITDA is now expected

19

to be in the range of $1.38 billion to $1.43 billion (from $1.40 billion to $1.45 billion)" and "[a]djusted EPS is expected to be in the range of $1.75 to $1.95 (from $1.80 to $2.00)."

65.    The same day, also during post-market hours, Graphic Packaging issued another press release announcing its appointment of Rietbroek as its new "President and [CEO] and as a director of the Company, effective January 1, 2026", and that Defendant Doss "has mutually agreed with the Graphic Packaging Board of Directors to step down from his role and as a director effective December 31, 2025."

66.    The market reacted swiftly and severely to the foregoing disclosures.  As reported by *Bloomberg* shortly after markets opened the following morning, Graphic Packaging's stock price had already fallen by more than 8%—the most in seven months—with trading volume spiking to more than seventeen times the 20-day average for that time of day.  Multiple market analysts, including Jefferies and Raymond James, among others, also commented on Defendant Doss's "unexpected" departure.

67.    Ultimately, Graphic Packaging's stock price fell $1.35 per share, or 8.66%, to close at $14.23 per share on December 9, 2025.

68.    Then, on February 3, 2026, during pre-market hours, Graphic Packaging issued a press release reporting its Q4 and FY 2025 financial results.  Among other results, Graphic Packaging reported Q4 non-GAAP EPS of $0.29, missing consensus estimates by $0.06.  The Company attributed its disappointing Q4 2025 earnings results to, *inter alia*, lower volumes, increased costs, and inventory reduction, stating, in relevant part:

> [Q4] EBITDA decreased 19% to $305 million, versus $376 million in the same quarter last year. Excluding the impact of business combinations and other non-recurring and special items, Adjusted EBITDA was $311 million versus $404 million in the same quarter last year. ***The $93 million decline in Adjusted EBITDA was driven primarily by the impact of lower packaging price and volume,***

*commodity and non-commodity costs, and negative Net Performance as a result of decisions taken to curtail production to reduce inventory*[.]

69.    In the same press release, Graphic Packaging disclosed that it projected a decline in adjusted EBITDA in 2026, citing, *inter alia*, a $130 million negative impact from actions to reduce inventory and generate FCF, stating, in relevant part:

The Company currently expects . . . Adjusted EBITDA . . . of . . . $1.05 billion to $1.25 billion . . . . ***The decline in expected Adjusted EBITDA reflects a $130 million negative impact from actions taken to reduce inventory and generate [FCF], an approximately $100 million accrual (non-cash in 2026) for a return to more normal incentive compensation, January weather and production impacts, and other largely offsetting operating items.***

70.    As quoted in the same press release, Rietbroek disclosed, in relevant part:

***Consumer affordability created a challenging market for our customers and competitive pressure remains a near-term headwind.*** As we move into 2026, our priorities are clear: drive operational excellence; deliver exceptional customer service; ***improve our cost structure***; and drive substantial [FCF] to strengthen the balance sheet and return capital to shareholders. ***I have initiated a comprehensive review of our organization structure, operations, and footprint***, and a selective review of our portfolio to ensure that our resources are focused where we can create the greatest value for our shareholders.

The foregoing statements confirmed the weakness and unsustainability of Graphic Packaging's present business model and operations.

71.    Following the foregoing disclosures, Graphic Packaging's stock price fell $2.36 per share, or 15.97%, to close at $12.42 per share on February 3, 2026.

72.    The same day, multiple market analysts reacted to Defendants' February 3, 2026 disclosures, indicating surprise and frustration with Graphic Packaging's results.  For example, Jefferies wrote that "the quarter & outlook is disappointing and reflects a more competitive backdrop & structural headwinds than appreciated", and that Graphic Packaging "will likely be in the penalty box for some time", citing, *inter alia*, "negative net performance due to production curtailment to reduce inventory."  Similarly, Raymond James wrote that the Company's "4Q25

21

result is completely overshadowed by a **disappointing 2026 guide and longer-term FCF outlook**,", noting, *inter alia*, the "$130M impact from actions to reduce inventory[.]" (Emphasis in original.)   RBC Capital Markets similarly noted that the Company's "FY26 Guide [was] Significantly Below-Street" expectations and issued a "Negative" sentiment on the Company. Likewise, UBS Global Research characterized the Company's "2026 EBITDA [guidance as] significantly below consensus ($1.15B vs $1.4B)", citing factors related to "inventory reduction." Well Fargo, meanwhile, wrote that "[w]hile we previously looked past near-term challenges toward 2026 FCF strength, the abrupt CEO change with no industry experience, a vacant CFO seat, and softening fundamentals shift our view", with "[r]epeated EBITDA guidance cuts and mounting competitive pressure in boxboard further weigh[ing] on confidence in [Company] targets; thus, we assign an UW [underweight] rating."

73.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Regulation S-K Items 105 and 303**

74.     Throughout the Class Period, Graphic Packaging's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Graphic Packaging to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants failed to disclose that Graphic Packaging was experiencing, *inter alia*, significant inventory management issues, as well as significantly reduced demand and volumes and increased

22

costs. Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

75. For similar reasons, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Graphic Packaging to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, the issues described *supra* at ¶ 74 violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

## SCIENTER ALLEGATIONS

76. During the Class Period, Defendants had both the motive and opportunity to commit fraud. For example, during the Class Period, while disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for Graphic Packaging's securities, Defendant Doss enriched himself by over $7 million by selling nearly 1.6 million shares of the Company's common stock, whereas Defendant Scherger enriched himself by nearly $1.8 million by selling 65,529 shares of the Company's common stock.

77. Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. Defendants' ability to manage inventory effectively and tailor such inventory to supply and demand were of paramount importance during the Class Period to manage costs efficiently and meet the Company's profitability and FCF goals. Defendants were thus undoubtedly laser focused on these aspects of the Company's business, as exhibited by their repeated and highly specific statements regarding these very issues, as detailed *supra*, in press releases and earnings calls with

investors and analysts.  Indeed, at all relevant times, Defendants repeatedly emphasized their focus on and purported ability to manage the Company's inventories to meet customer demands.

78.    Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

79.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Graphic Packaging securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

80.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Graphic Packaging securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Graphic Packaging or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

81.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

82.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

83.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Graphic Packaging;

- whether the Individual Defendants caused Graphic Packaging to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Graphic Packaging securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

84.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

85.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Graphic Packaging securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Graphic Packaging securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

86.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

87.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

88.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

89.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

90.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Graphic Packaging securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Graphic Packaging securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

91.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Graphic Packaging securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Graphic Packaging's finances and business prospects.

92.     By virtue of their positions at Graphic Packaging, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

93.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Graphic Packaging, the Individual Defendants had knowledge of the details of Graphic Packaging's internal affairs.

94.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Graphic Packaging.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Graphic Packaging's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Graphic Packaging securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Graphic Packaging's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the

28

Class purchased or otherwise acquired Graphic Packaging securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

95. During the Class Period, Graphic Packaging securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Graphic Packaging securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Graphic Packaging securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Graphic Packaging securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

96. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

97. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

98.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

99.     During the Class Period, the Individual Defendants participated in the operation and management of Graphic Packaging, and conducted and participated, directly and indirectly, in the conduct of Graphic Packaging's business affairs.  Because of their senior positions, they knew the adverse non-public information about Graphic Packaging's misstatement of income and expenses and false financial statements.

100.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Graphic Packaging's financial condition and results of operations, and to correct promptly any public statements issued by Graphic Packaging which had become materially false or misleading.

101.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Graphic Packaging disseminated in the marketplace during the Class Period concerning Graphic Packaging's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Graphic Packaging to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Graphic Packaging within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Graphic Packaging securities.

102.    Each of the Individual Defendants, therefore, acted as a controlling person of Graphic Packaging.  By reason of their senior management positions and/or being directors of Graphic Packaging, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Graphic Packaging to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Graphic Packaging and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

103.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Graphic Packaging.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  May 7, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Attorneys for Plaintiff*